# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SANDRA OLIVER )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MAXWAY STORES, *et al.* )<br>)<br>Defendants. )<br>) | Civil Action No. WGC-12-3033 |

## MEMORANDUM OPINION

Plaintiff Sandra Oliver ("Mrs. Oliver") brought this action against Defendants Maxway Stores and Variety Wholesalers, Inc. alleging negligence and seeking $320,000 in damages. The parties consented to proceed before a United States Magistrate Judge for all further proceedings in the case and the entry of a final judgment. *See* ECF No. 16. The case thereafter was referred to the undersigned. *See* ECF No. 18. Pending before the court and ready for resolution is Defendants' motion for summary judgment (ECF No. 25). Mrs. Oliver filed an opposition (ECF No. 28). The deadline for Defendants to file a reply elapsed on September 16, 2013. No hearing is deemed necessary and the court now rules pursuant to Local Rule 105.6 (D. Md. 2011).

## BACKGROUND

On the afternoon of December 6, 2009 at approximately 2:30 p.m., Mrs. Oliver and her daughter, Tabitha Oliver, visited a Maxway store located at 4221 Branch Avenue, Temple Hills, Maryland 20748. Approximately five minutes after entering the store, while walking down an aisle, Mrs. Oliver slipped and fell. When she hit the floor, Mrs. Oliver felt a greasy substance. She did not see the clear liquid before falling. Shortly after Mrs. Oliver fell, a Maxway store employee named Wanda arrived on the scene and remarked that she slipped on the same oil.

**JURISDICTION AND VENUE**

Subject matter jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Mrs. Oliver resides in Suitland, Maryland. *See* ECF No. 2 at 1. Defendant Variety Wholesalers, Inc., doing business as Maxway Stores, is a North Carolina corporation. Its wholly owned subsidiary, Defendant Variety Stores, Inc., doing business as Maxway Stores, is a Delaware corporation. *See* ECF No. 13 ¶ 2. The amount in controversy exceeds $75,000, exclusive of interest and costs. Pursuant to 28 U.S.C. § 1391 venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district.

**STANDARD OF REVIEW**

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing no genuine issue as to any material fact exists. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold,*

*Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

On those issues where the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256. However, "'[a] mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959 (1968)). There must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## DISCUSSION

A.  Overview – Premises Liability

Before addressing the parties' positions regarding genuine issues as to any material fact, the court must address some preliminary matters. Since this court's jurisdiction is based on diversity of citizenship, the principles outlined in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require the application of Maryland law to substantive law questions. Under Maryland law a property owner owes a certain duty to an individual who comes in contact with the property, and the scope of the duty owed is dependent upon the individual's status while on the property. *Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680, 688, 705 A.2d 1144, 1148 (1998). Maryland law recognizes four categories of individuals: (1) an invitee, (2) a licensee by

3

invitation, (3) a bare licensee and (4) a trespasser. An invitee is an individual who is on the property for a purpose related to the landowner's business. "An occupier of land has a duty to use reasonable and ordinary care to keep the premises safe for an invitee and to protect him from injury caused by an unreasonable risk that the invitee, by exercising ordinary care for his own safety, will not discover." *Henley v. Prince George's County*, 305 Md. 320, 339, 503 A.2d 1333, 1343 (1986).

A licensee by invitation is a social guest and the landowner "owes a duty to exercise reasonable care to warn the guest of dangerous conditions that are known to the [landowner] but not easily discoverable." *Flippo*, 348 Md. at 689, 705 A.2d at 1148 (citation omitted). For a bare licensee, a person on the property with permission but for his/her own purpose, a landowner only owes a duty to refrain from willfully or wantonly injuring the bare licensee and to refrain from creating "'new and undisclosed sources of danger without warning the [bare] licensee.'" *Id.* (citation omitted). For a trespasser, someone who intentionally and without permission enters another's property, a landowner owes no duty except refraining from willfully or wantonly injuring or entrapping the trespasser.

On December 6, 2009 Mrs. Oliver was a customer at a Maxway store in Temple Hills, Maryland. Mrs. Oliver was in the store for a purpose related to Defendants' business. Mrs. Oliver was thus an invitee. Defendants acknowledge this fact. "It is undisputed and conceded that the Plaintiff was a business invitee of the Defendants at the time of the occurrence." ECF No. 25 at 4.

B. Negligence

To establish a *prima facie* case of negligence under Maryland law, Mrs. Oliver must prove "'(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the

4

defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *Valentine v. On Target*, 353 Md. 544, 549, 727 A.2d 947, 949 (1999) (citations omitted). Negligence means doing something a person using reasonable care would not do, or not doing something a person using reasonable care would do. *Maryland Civil Pattern Jury Instruction* 19:1. Ordinary or reasonable care means "that caution, attention or skill a reasonable person would use under similar circumstances." *Id.*

"As a business invitee, the Plaintiff was entitled to expect the Defendants to exercise the highest standard of care which the law requires of a premises owner." ECF No. 25 at 4. Defendants owe a duty of ordinary care to keep its premises safe for an invitee such as Mrs. Oliver. That duty is defined as follows:

> [A]n owner or occupier of land only has a duty to exercise reasonable care to "protect the invitee from injury caused by an unreasonable risk" that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care. The duties of a business invitor thus include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers.

*Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388, 693 A.2d 370, 374 (1997) (internal citations omitted).

Defendants are not an insurer of Mrs. Oliver's safety while Mrs. Oliver is on their premises. "[N]o presumption of negligence on the part of the owner arises merely from a showing that an injury was sustained in his store." *Moulden v. Greenbelt Consumer Servs., Inc.*, 239 Md. 229, 232, 210 A.2d 724, 725 (1965). Therefore, "[i]n an action by a customer to recover damages resulting from a fall in a store caused by a foreign substance on the floor or

stairway, the burden is on the customer to produce evidence that the storekeeper created the dangerous condition or had actual or constructive knowledge of its existence." *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 119, 113 A.2d 405, 408 (1955).

C.   *Constructive Knowledge*

Defendants assert Mrs. Oliver has not produced any "time on the floor" evidence and thus Mrs. Oliver cannot prove Defendants' negligence. During her deposition Mrs. Oliver conceded she did not know how long the clear, oily liquid was on the floor before she slipped and fell. Further, when questioned about her answers to certain interrogatories whereby she stated the slippery substance was on the floor for about 30 minutes, *see* ECF No. 25 at 25, Mrs. Oliver conceded the "30 minutes" was roughly a guess, *see id.* at 23.

> The Plaintiff's evidence provides a jury with the opportunity to do nothing more than speculate about how long the liquid has been there before "Wanda" fell "just" before Plaintiff fell, about who put the liquid there, and about whether it is reasonable to believe that anyone working for the Defendant (including Wanda) could have or should have been aware of its existence on the floor before her accident with sufficient time to do something about it. Plaintiff provides no "time on the floor" evidence other than the fact that "Wanda" had "just" fallen herself.

*Id.* at 9.

In *Maans v. Giant of Maryland, LLC*, 161 Md. App. 620, 639-40, 871 A.2d 627, 638 (2005), the Court of Special Appeals of Maryland explained the purpose of "time on the floor" evidence.

> (1)   [I]t requires a demonstration of how long the dangerous condition existed prior to the accident so that the fact-finder can decide whether the storekeeper would have discovered it if he or she had exercised ordinary care; and (2) it also shows that the interval between inspections was at least as long as the time on the floor. Thus, proof of time on the floor is relevant, not only as to notice but also as to the issue of what care was exercised.

Mrs. Oliver has offered "time on the floor" evidence. Wanda Foote worked for Maxway Stores in 2009. In her sworn statement of August 15, 2013, Ms. Foote declares,

> On December 6, 2009 I was working at the Maxway Stores in Temple Hills. I walked down the hair and beauty aisle at around 2:05pm and slipped on oil.
>
> At around 2:35pm before we were able to clean up the oil or post warning signs, I saw a customer named Sandra Oliver slip and fall in the same area. I went over to help her but she was unable to move after she fell. I said to Ms. Oliver and a young girl that I slipped in the same area.
>
> I reported both incidents to the manager, who prepared an incident report and gave it to Ms. Oliver. The ambulance later came and took Ms. Oliver to the hospital.

ECF No. 28-2. The incident report, completed December 6, 2009, includes the store's account of how the accident occurred: "Employee - (    ) said she slipped on oil cust[omer] walked down [a]isle and slipped." ECF No. 28-3.

Three months before the sworn statement was obtained from Defendants' former employee Wanda Foote, Mrs. Oliver's daughter provided a sworn statement on May 4, 2013 declaring in pertinent part,

> On December 6, 2009 my mother and I entered the Maxway Store at around 2:30pm. We had just come from church. My mother was walking in front of me in the Health and Beauty Supply aisle. She fell backwards on some oil or slippery substance. She could not move and an employee named Wanda came up and tried to help. Wanda said that she slipped in the same area about 30 minutes earlier. There were no caution signs at the site where my mother fell. The store manager came and filled out a report. I stayed with my mother while waiting for the ambulance. When the ambulance came, I went with her to the hospital.

ECF No. 28-4.

Mrs. Oliver has established a *minimum* length of time (30 minutes) the oil or slippery substance was on the floor. It is not known how long the oil or slippery substance was on the floor *before* Wanda Foote slipped. In *Rehn v. Westfield America*, 153 Md. App. 586, 837 A.2d 981 (2003), the Court of Special Appeals of Maryland found a period of less than four minutes between a Chick-fil-A employee learning soda had been spilled on the floor and the appellant slipping and falling on the soda was not a sufficiently long period of time for appellee to respond to the hazardous condition. In this case however 30 minutes *may* constitute a sufficiently long period of time for Defendants to discover the oil or slippery substance on the floor and either clean the floor and eliminate the hazard or, post caution signs to alert customers about the hazard.

David Keightley, a District Manager for Defendants, testified about Defendants' safety program where managers walk the store throughout the day to ensure there are no hazards within the store. *See* ECF No. 28-6 at 2. No evidence has been presented however regarding how often managers at the store where Mrs. Oliver slipped and fell walked the premises either on the day in question or typically. Moreover, the obligations imposed by the safety program are not limited presumably to managers only but apply to all store employees. Is 30 minutes a sufficient length of time for a manager or any employee to have a reasonable opportunity to respond to a hazard? Based on the evidence presently available to the court, this question cannot be answered with any certainty.

> It is not necessary that there be proof that the inviter had actual knowledge of the conditions creating the peril, it is enough if it appears that it could have discovered them by the exercise of ordinary care, so that, if it is shown that the conditions have existed for a time sufficient to permit one under a duty to know of them, to discover them, had he exercised reasonable care, his failure to discover them may in itself be evidence of negligence sufficient to charge him with knowledge of them.

*Moore v. American Stores Co.*, 169 Md. 541, 182 A. 436, 440 (1936) (citation omitted).

In determining whether the moving party has shown there are no genuine issues of any material fact, this court must assess the factual evidence and all inferences to be drawn in the light most favorable to the nonmoving party. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 438 (4th Cir. 1998). Mrs. Oliver has offered evidence sufficient to raise an inference that Defendants may have had *constructive notice* of the oil or slippery substance on the floor. Summary judgment therefore is inappropriate.

D. *Actual Knowledge*

Defendants admit they had actual knowledge of the oil or slippery substance on the floor but claim they did not have a reasonable opportunity to respond to the hazard before Mrs. Oliver slipped and fell.

> The only evidence of notice, in this case actual and not constructive, is that store employee "Wanda" had "just" fallen in the same spilled liquid and was "right there" when Plaintiff herself fell. There is no evidence of how long before store employee "Wanda" fell that the slippery liquid had been o[n] the floor, or of any particular time span whatsoever during which "Wanda" could have done anything to clean up the spill or put up any warnings.

ECF No. 25 at 8. Defendants' arguments are based on Mrs. Oliver's own deposition testimony.[1] Wanda Foote's sworn statement that she slipped on oil *30 minutes before* Mrs. Oliver not only challenges Defendants' sequence of time but also suggests Defendants had a reasonable opportunity to respond to the hazard. No additional evidence has been presented on this matter as Defendants elected not to file a reply.

---

[1] There is an assertion by Plaintiff that Mrs. Oliver's inconsistent answers during her deposition were due to her illness and medication.

Although Defendants concede having actual knowledge of the hazardous condition, there is a critical dispute, namely, the length of time the oil or slippery substance was on the floor before Mrs. Oliver slipped and fell. Such a dispute cannot be resolved by summary judgment.

## CONCLUSION

For the foregoing reasons, the court finds there are genuine issues as to a material fact and thus Defendants are not entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). An Order will be entered separately denying Defendants' motion for summary judgment.

<u>November 18, 2013</u>           _____/s/_____
           Date                              WILLIAM CONNELLY
                                      UNITED STATES MAGISTRATE JUDGE